Elden Guerrero v. Secretary Nielsen Is that the new boss? Yes, it is, Your Honor. My name is Obad Olhak, and I will be representing the appellants, defendants below in this case. Your Honors, this case comes before the court on an order of the Eastern District of Louisiana in which the district granted summary judgment to plaintiff Mr. Guerrero, and appellants contend that that grant was in error. And as a result, the government requests that this court vacate that order and grant judgment to the government because temporary protected status in this case does not overcome a crew member bar to adjustment of status. So allow me to run you through some of the framework that is applicable to the Immigration and Nationality Act in this case. Congress has specifically legislated in a way that restricts crew members from being able to adjust their status, and by adjustment I refer to changing, getting a green card, a lawful permanent residency. Title VIII, Section 1255C1 specifically states that aliens that seek to adjust their status that have been admitted as crew members or are crew members may not adjust their status under the Immigration and Nationality Act. And Congress has provided two pathways and purposefully provided only two pathways given the ease by which crew members can enter the United States. That is to say, Congress has specifically made the pathway of crew members to getting a green card restrictive, and those are, those two pathways are, one, if the alien is a self-petitioner under the Violence Against Women Act. If that is the case, then the entirety of Section 1255C does not apply to that person. The second pathway is if that individual filed a visa petition prior to the sunset date of the Life Act, which would have been April 30th, 2001. None of those exceptions apply to Mr. Guerrero. However, the argument here is that the first one is an explicit carve-out referencing 1255C. It's contained within the prefatory language of 1255C that any alien other than a VAWA, self-petitioner under the VAWA, the Violence Against Women Act. And the second one is kind of like a waiver under Section 1255I. Roberts. Crew member turns on circumstances of entry? Of the, of the entry, yes. Whether It is retrospective. In other words, it's immutable once you're an alien crew member? That is, that is correct, Your Honor. And while this particular, there's a particular regulation that the government did not raise because this wasn't an issue below, but for the Court's information, regardless of whether the person is now still serving as a member of a crew or not, that person will be deemed a crew member because they entered the United States to join a crew or were transiting through the United States in order to join the crew. And that regulation is. Is there a time limit? I mean, do you become a crew person forever and you never, because you never end up at your other ship, whatever the case may be? Is there a time limit that you have 60 days, 90 days to go from one ship to the other or whatever? Or are you indefinitely a crew person? I can answer. I think there's two questions in there, Your Honor. One is in the case of a crew member that is admitted to the United States at a port of entry, that individual is usually given 30 days in which to join his crew and depart the United States on that vessel. Your other question was, is that person considered a crew member indefinitely, whether or not they overstayed that period and joined the crew or not? And that is what the regulations say, the regulations specifically being 245.1b2 of Title VIII of the Code of Federal Regulations, which basically says, it uses the past tense, and it says that an individual that was admitted to the United States as a crew member or was transiting through the United States in order to join a crew, that person will be considered a crew member and that person is barred from adjustment of status. But we get to the question of temporary protected status because that's the crux of the matter here. Well, why do we get to it? I agree, Your Honor. Certainly we don't need to get to it because the statutory language is clear at 1255c1, which governs adjustment eligibility. But if we need to get to it, I suppose the relevant provision is at Section 1254aF4, which says that during a period an alien is granted temporary protected status, that alien is considered as being in and maintaining lawful status as a nonimmigrant. Now, the purpose of temporary protected status is to prevent an alien from being removed from the United States. So he can't be removed because he does have that status, but that doesn't alter the fact that he's an alien crew member. That is the government's position. Is it also irrelevant that he overstayed? It is irrelevant that he overstayed. Because the overstay is a little in tension with 1254, saying he's lawful, right? That is correct. All 12 — the purpose of Section 1254aF4 in the temporary protected status statute is to allow a person who enters the United States that, for example, in Mr. Guerrero's case, overstays a period of lawful admission, whether it's a crew member or not, it prevents the execution of a removal order against that person and allows that person to remain lawfully. The question here is that Mr. Guerrero in the district court read into the statute at bar the requirement that an individual is admitted into the United States. But you will see in the statute nowhere is the term. In fact, in only one spot in the entire TPS statute is the term admitted or admission used. And that is with respect to an alien coming to the United States seeking admission in order to apply to TPS. And that does not apply here. This might not be relevant, but right now, is it Honduras? Is it a country where people will not be deported because of the conditions in Honduras? At some point, could that be taken away? And then what would be his situation if Honduras is no longer considered a dangerous country where people are not going to be deported? Would he be a crewman eligible for deportation? Or what would be the situation? So as of right now, currently, the administration has extended temporary protected status to Honduras for I think it's six months. However, it is within the discretion of the Secretary of Homeland Security to remove that designation or continue that designation. And usually, since temporary protected status was given to Honduras back in 1999, it has been designated, as you can see, for a long period up until now. So you could go to that. But there have been suggestions that it's going to end soon, which is a tightening window for him. Correct, Your Honor. For adjustment purposes, yes, Your Honor. And this kind of goes to both Your Honors' questions of what happens in the case of an individual who had TPS and now no longer has the TPS. Well, the way the statute is written, and by the statute I refer to 1254af, it says during a period in which an alien is granted TPS. So that means that outside that period, temporally, that the person would no longer be considered lawfully present in the United States as though they are a nonimmigrant. And so under that scheme, Mr. Guerrero would be subject to removal, given that he overstayed his crewman visa. But until that time, he is not removable. But that is where it ends for Mr. Guerrero. Well, if you win, though, and he is married to a U.S. citizen, what's the effect? He has to leave and apply? Yes. So the only way that Mr. Guerrero could adjust, other than the two sort of carve-outs that Congress has provided, is if he were to leave and return in another status that is not a crew member, say a tourist or a student or any number of those types of status. And given that he is married to a United States citizen, he may — there may be an issue of some unlawful presence as it pertains to inadmissibility grounds. I won't get into that too much. But what I will say is he would be able to consular process, that is to say, get a green card and enter the United States that way. Would there be a timeframe where he'd have to go back to Honduras for 5 years, 10 years or something, or could he go and apply and be back in 6 months, or do we know? Given that he is married — I'm sorry, Your Honor. No, go ahead. Given that he is married to a United States citizen, he would have to waive any unlawful presence that he has accrued, which would only actually be a very short period, the period after which he overstayed his crew member and then the period that he got his temporary protected status, which I think was about 8 or 9 months. So he would have to seek a waiver, and he could do that through his United States citizen spouse. There aren't any courts that have really addressed the interplay specifically between 1254 and 55C, but circuits have gotten tangled up with 55A, correct? Well, yes, Your Honor. And how that relates with TPS. If we were to rule in your favor, would we be creating authority that's in tension with the Sixth Circuit in Flores or the Ninth Circuit in, what is it, Ramirez? Ramirez, yes, Your Honor. So if the court were to rule in the government's favor, it would be doing two things. It would be ruling consistently with its own precedent. In this case, in Gomez v. Lynch, which talks about status and admission being two separate concepts, and if status and admission are two separate concepts, TPS itself cannot be a new admission. That erases and overcomes a prior admission. It would also be potentially in conflict with the Sixth and Ninth Circuit's cases, because if the court is to rule that TPS does not overcome crew member status, that is because that would be because TPS is not properly a new admission, which is, again, the government's position. That would be consistent only with currently the Eleventh Circuit's decision in Serrano, and not it would be inconsistent with Flores and Ramirez. But Flores and Ramirez were not properly decided because of this circuit's precedent, which arose after briefing was completed in Gomez v. Lynch, which talks about the concepts of status and admission specifically in the context of adjustment of status, which is the very relief that Mr. Guerrero is seeking. Why do we have to touch those two cases if they're interpreting 1255a? Well, Your Honor, they interpret the interplay of those two cases, Flores and Ramirez, they interpret the interplay of 1255c2 with 1254aF4, which is the lawful status provision of temporary protected status. The court could limit its ruling and say that for purposes of this case, a person that is admitted to the United States or enters the United States as a crew member, that temporary protected status does not overcome that prior admission. And that would actually be consistent with this court's treatment of similar non-immigrant status in Khan Natwile v. Holder, which involves That case you cited? Yes, it is. Because that approach analytically doesn't address TPS at all. It does not. It does not. But it's an analogous scenario, because what you have in that case is a person that is admitted to the United States as a fiancé. Now, when a person is admitted to the United States as a fiancé, they have two choices. They can marry the person that petitioned for them to enter and be admitted to the United States, or they must leave within 90 days. In that particular case, the alien entered the United States, did not marry the original petitioning fiancé, married someone else, and then was subject to extreme cruelty by that second — by that spouse. And the way this court held was that the after arising status of being subject to extreme cruelty, that is to say they were considered a VAWA self-petitioner, does not trump the fact that they were admitted in a K-1 fiancé status. And a K-1 fiancé under Section 1255d can only adjust their status to the original petitioning spouse, by the plain language of that statute. And so their after arising status as a VAWA self-petitioner did not trump their admission, in much the same way that Mr. Guerrero's TPS does not trump his admission as a crew member. It's further consistent with Section 1254a.a.5, which talks about being able to hold two statuses concurrently. And these arguments were made to Judge Berrigan? Yes, they were. These arguments were made to Judge Berrigan, and they were raised in the briefing. The only — the only new consideration, I suppose, before the Court is what effect does Gomez v. Lynch have on this case. And while the case deals with lawful temporary residence and a separate regulation, it does talk about status and admission being two separate concepts. The only way Mr. Guerrero can get to where he needs to be is if status — is if admission is read into a statute where the word admission is purposefully absent, because status and admission are purposefully considered two separate concepts in immigration parlance. And so for those reasons, Your Honor, we would request this Court reverse the district court's ruling. Okay. Thank you. Ms. Macklin? Good morning, Your Honors. May it please the Court, my name is Jason Macklin on behalf of Eldon Guerrero. The government misses a crucial point when they begin their analysis, and this Court actually brought it up in Oriana. In order to be eligible for TPS, you must be continuously present since the date of designation of said country. You must continuously reside in the United States since the date of that designation. Very important, you must be admissible as an immigrant and then register during the appropriate period. The admissible as an immigrant is important because crew members are never admissible as an immigrant, right? Because 1255c1 says they can never become immigrants, people who intend on permanently residing in the United States. So you're — but by starting this way, you're saying your argument depends on that sentence in the background section of Oriana, which isn't interpreting 1255c? Correct, Your Honor. And the reason is because at the moment that USCIS granted Mr. Guerrero temporary protected status, they deemed him admissible as an immigrant. They cured the defect of the entry as a crewman. But when you look at the language of 1254, it doesn't say deem or cure or extinguish or erase. It doesn't use any of those verbs. And if his point is that when Congress wants to write a carve-out, they can write it as they did for VAWA. What's the language in 1254 that you say has extinguished his status as an alien crew member? It's the moment at which the TPS is granted, Your Honor. No. What's the language in 1254? What is the exact language you're relying on to cure a situation he was in? The follow-up language in 1254 is at 1254afd, which states that any holder of TPS shall be deemed as in lawful nonimmigrant status and maintaining that status for purposes of the statute. So he is lawful. Let's assume he's a lawful nonimmigrant. He is. But what does that say? Why does that still not make him also an alien crew member? In this Court's holding in Oriana. Holding? When this Court ruled in Oriana, it stated or pointed out that the termination of the designation of TPS would return the alien to the same immigration status previously held, provided such status has not been expired or been terminated. My client's crewman visa was already expired at the point in which he applied for TPS. That entry as a crewman does make him ineligible to be deemed admissible as an immigrant because we don't want them to jump ship, as it's stated in, I believe, Quintotlan. There is a policy guidance for using a stick, per se, to prevent crew members from not joining their crew. However, when you look at the TPS statute and the underlying aim, which is humanitarian, Congress is saying these persons, these foreign nationals, cannot return safely to their home country for whatever the reason may be. But they've just acknowledged he can't be removed. The issue is just statutorily, can he change status? And Congress has said alien crew members can't. He's deemed an alien crew member at the point of entry. That status we've said in the Lew decision is immutable. Why isn't that the end of the story? Because, Your Honor, Government Counsel brought up in one of their briefs sort of a dual status. When Congress indicated in 1254 A.F.D. that TPS holders shall be in lawful nonimmigrant status, they didn't specify what type of lawful nonimmigrant status that person would be in. It just says for purposes of the entire framework of 1255, they shall be deemed as in lawful nonimmigrant status for purposes of adjustment. It would be absurd to think that Congress would have granted a lawful nonimmigrant status to a TPS holder that by its very nature would be ineligible for adjustment, such as a crewman. But wasn't, though, the purpose that he cannot be removed, but that doesn't necessarily mean that he can become a resident alien. Just say he can't be removed, but his status can't change either. So there's nothing in there that says he can immigrate. It just says he can't be removed. If there was nothing in there saying that he couldn't immigrate, why would the TPS statute state that for purposes of adjustment, these TPS recipients shall be considered in lawful nonimmigrant status? And if they were — if TPS holders were not able to immigrate, why would one of the requirements in eligibility for TPS state that they have to be admissible as an immigrant? If that were the case, Your Honor, then my client should never have been granted TPS in the first place. And, in fact, no crew members could ever be granted TPS. Well, that doesn't make sense to me. You're granting them TPS so you don't send them back to a home where whatever has happened terrible has happened. He is protected from that. The exact humanitarian purpose of TPS is still in place for him unless the current administration removes it. So he's getting the benefits of TPS the way I see it. But he's not. Well, you say that, but they can't remove him. But you're eliminating one of the benefits that Congress put into the TPS statute, which is adjustment of status. Well, okay. It depends. I don't see where Congress said that. What I see Congress saying is people can adjust unless you jump ship or you jump the plane. And we've got this very specific, explicit plain language bar. Those people can't. And then I don't see 1254 saying, no, we're rescinding that for TPS people categorically. And, I mean, why isn't his point pretty telling that when they wanted to write that they did as for VAWA? They also didn't write that for anybody who entered without inspection. But those people are also not admissible as an immigrant. And then they are deemed admissible as an immigrant upon the grant of TPS. Okay. What's your best case for that? I may not have studied that well enough. Your Honor, for example, Flores in the Sixth Circuit mentions that the grant of TPS status overcomes the bar to adjustment for purposes for persons who enter without inspection. So 1255C does have the prefatory language, which carves out an exception for VAWA self-petitioners, right, because they're a protected class. Right. TPS recipients are also a vulnerable class. They're foreign nationals from a country to which they cannot return safely. So when Congress put in 1254 AFD, one of the benefits for TPS recipients, it's adjustment of status. Adjustment of status is a very specific term of art. It is not consular process. What the government has proposed is that Mr. Guerrero can consular process, which means he's going to have to leave the United States. Yes, he does have an unlawful presence in admissibility bar because it was over six months before, between the time his crewman visa expired until he was granted TPS status. That's a three-year bar. So what the government is proposing is that Mr. Guerrero, and this is also what the government is contending that Congress intended, for persons who are from these countries where they cannot safely return, if they entered in any other status other than student or worker, then they must go back to the country from which Congress has specifically protected them from. In Mr. Guerrero's case, he's going to have to wait for three years. Yes, there is a waiver available, but only if he can prove that his wife suffers from extreme hardship. And in my experience in practicing immigration law for 10 years, it's very difficult to prove extreme hardship if the U.S. citizen does not have some type of health problem or mental problem. I believe that Congress intended and specifically stated that for all TPS recipients, it does not say in 1254A anywhere that all TPS recipients are eligible for adjustment of status except for these people. It specifically references the entirety of 1255, not just 1255C2, as the government would want you to. But doesn't it say that they're not applicable to, that the section's not applicable to alien crewmen? I mean, the statute says that. No, it doesn't say that in TPS, Your Honor. It does not state that in the TPS statute. Where does it state that? It does state it. It says that in 1255C1. But also in 1255C, you have bars for persons who enter without inspection. You have bars for persons who work without prior authorization. So what the district court held in this case was that if the government's interpretation is to be followed, 1254AFD has very, very little application because 1254C2, is a bar to adjustment for persons who do not maintain lawful status. But there's an exception in there already for immediate relatives and for special immigrants. Would you say, I mean, the alien file isn't complete in this record. Would you say you and opposing counsel agree that he did last enter as an alien crew member, factually? Yes, Your Honor. And would you say you both agree as a result of TPS in 1255, he is a lawful non-immigrant? He is a lawful non-immigrant. Those two facts, both people agree on? Okay. Yes. And is our law clear that that status as an alien crew member is immutable? I don't believe that is clear, Your Honor. And the reason is, is that— You're familiar with our decision. It's an old one, Lew v. INS. Unfortunately, I'm not familiar with that one when I was reviewing the cases, Your Honor. However, again, going back to what this Court stated in Oriana, that at the moment TPS is rescinded or revoked for a person, they revert back to their prior status. So the— If our case law says it's immutable, what happens to your argument? My argument is that it's a dual status. Dual status, okay. So if he reverts back to his prior status, what would that be? His prior status would be an expired crewman overstay, somebody who has remained in the United States past the authorization to board the vessel, Your Honor. But what's important to look at is that Congress specifically included in the TPS statute that adjustment of status is possible. And not only adjustment of status, but change of status. Change of status is also 1258—I'm sorry, U.S.C. 1258 also states that crewmen aren't eligible for that. But why would Congress want to bar crewmen from adjustment of status or change of status when they've been granted temporary protected status? It doesn't say anywhere in the TPS statute that crewmen aren't eligible. The only point at which we could state that the TPS statute was not intended to be granted— Congress is just trying to make sure every single time a plane lands in this country, there's no incentive system for them to step off and stay and then try to change their status. Absolutely. So we have thousands of aliens coming in and out in this category. So it makes sense that they would say, you folks can't seek to become lawful permanent residents. I don't deny that. However, when someone is a national of a foreign country that has been designated for temporary protected status, that's something very specific, very limited. You're in my view that he gets that protection. He's always got that until it leaves. Let me ask a different hypothetical. What if he'd married in the first 29 days? What if he'd gotten married? Again, put TPS aside. Would you say that then he would be eligible to change status? Or would the alien crew member trump that? No, Your Honor. I don't think it has anything to do with whether or not he overstayed or whether he was in current crewman status right now. Let's say crewman status lasted for six years. So if he had married a U.S. citizen in that 30-day period, would 1255C bar him from changing status or not? Yes. It would? Yes. How is that different? Because in direct contravention to the law, government wants you to believe that TPS does not trump any other status, but it actually does. Because upon the moment that Guerrero was granted temporary protected status, he obtained this separate and finite protection, which is true. It could end at any time. The government could de-designate Honduras just like they did for Nicaragua. Hopefully not because of the current situation there is actually pretty bad. However, because the TPS requirements for eligibility state that you must be admissible as an immigrant, and because USCIS deemed Mr. Guerrero admissible as an immigrant. Isn't that sort of like an estoppel argument more than the statutes? Possibly. I don't think that they can argue that he's not admissible as an immigrant because upon granting TPS, they deemed him admissible as an immigrant. Regardless of manner of entry, we could be talking about persons who entered without inspection, as in Mr. Oriana. We could be talking about persons who entered as a crewman, as my client. Regardless of the manner of entry, that person is deemed admissible as an immigrant at the moment that the service decides to grant temporary protected status. Is he deemed admissible or is he deemed not removable? Is there a difference between? There is absolutely a difference, and the statute states admissible as an immigrant. So if you follow that estoppel argument, then the government cannot now come back and say, oh, but you're not admissible as an immigrant because you entered as a crewman. TPS covers that. TPS supersedes that. And just like this court stated, if TPS ends, he reverts back to his prior status. That is immutable. We can't change the fact that he entered as a crewman, and we can see that. However, upon the grant of TPS, he became admissible as an immigrant, and he also became deemed, shall be deemed as in lawful nonimmigrant status for purposes of adjustment. Any other reading of the law would be in direct contravention to Congress's intent that these persons deserve protection. They should not be removed, or they shall not be removed to their country because it's not safe for them to return. So why would Congress specifically state that one of the benefits of temporary protected status is adjustment of status or change of status when they're saying, okay, but these certain people, it doesn't apply to them? It references the entirety of 1255, not just 1255A, not just 1255C, not just 1255C1 or C2. The entirety of 1255 was referenced when Congress delineated this special adjustment provision. It's almost like a legal fiction. And the Ramirez, the Ninth Circuit in Ramirez, just stated the same thing. Now, I understand that here in the Fifth Circuit, status and admission are two totally different things. But what Ramirez points out is that there's a rigorous background check. There's things that have to be proven, the continuance of presence, the continuance of residency, good moral character. You can't have more than one misdemeanor. You cannot have been convicted of a felony. So the applicants are going through a rigorous process to ensure that they are basically being inspected. My client was admitted. I don't have to overcome the prefatory language of 1255A. However, I do believe that 1254AFD overrides all concerns that may be a bar to adjustment with respect to any prior entry, regardless of the status. One last thing I wanted to point out to the Court is that when looking at the TPS, what is the — what are the triggers of a TPS? And how do I gain temporary — let's go back to basics for a moment. How do I gain temporary protective custody? I'm coming in on a ship on a crew, and so now I have, by the statute, a certain amount of lawfully here for those purposes of a period of time and also to give me time to get from one port to another, et cetera. This man had temporary protective — what gave him precisely his status as temporary protective status, TPS? The fact that he was present in the United States on the date of the designation of Honduras for TPS. I'm sorry, the date of what? The fact that he was present in the United States on the date of designation for temporary protective status. He continuously resided in the United States since the designation of temporary protective status. He faithfully re-registers for temporary protective status. I'm asking in another way. Is every person who is admitted in the United States as a crew member for these purposes also enjoy temporary protective status? No. There's a separate designation. You have to do more than just be a crew member that enjoys the protection as a crew member. You're lawfully here as a crew member, okay, but you're not necessarily have temporary protective status. Now, what did this individual do to gain temporary protective status exactly? He applied with the service. Sorry? He applied for registration with the service, and because he met the eligibility requirements, he was granted temporary protective status. The eligibility requirements, what do they add to — what additional prerequisites to TPS do they add to the circumstance that he's a crew member? They don't add any. The TPS statute does not — The only thing is that any crew member who applies for TPS is entitled to it? No. What crew member is entitled to it? Crew members who were in the United States on the date of designation of the country for temporary protective status. When that country is designated. So it's the happenstance of some other country. Okay. I want to be sure that I understood that it's the independent operation of TPS. I was trying to get clear before us the independence of TPS designation from the status that attends the presence as a crew member. Correct. And just like crew members can be deported if they overstay, once they are granted TPS, they cannot be removed. But just like crew members cannot adjust status once they're granted TPS, they are deemed in a lawful nonimmigrant status sufficient for adjustment of status purposes. Okay. Thank you. Thank you so much. Just one quick question is he cannot readjust. He's here. He cannot be removed. But if he does want to readjust, then we're telling you have to go back to your country that we've declared is too dangerous and you don't have to go back to. But if you want to stay here permanently, you have to go back. Yes, Your Honor. The way the TPS statute is written is that at section 1254A.F.1 it says a person granted TPS is not residing in the United States permanently under the color of law. In order to reside permanently, they need to get lawful permanent residence. What 1254A.F.4 does is it removes some impediments to eligibility written into the adjustment statute at 1255C. Now, with respect to what his option is, yes, he would have to go back, and he is eligible for a waiver for the unlawful presence that he accrued between overstaying his crewman and getting temporary protective status. However, that is the way Congress has written the statute, and it's rational given the fact that a person would want to enjoy a superior status that is lawful permanent residency versus the one benefit, well, there's really two, but one benefit of temporary protective status, which is to not be deported, the other benefit being getting employment authorization. I want to briefly talk about, in the time that I have remaining, this idea of admissibility. In order to get adjustment of status, in order to get your green card, you need to make an application. You need to have an immediately available visa, both of which Mr. Guerrero has done, and you need to be admissible, which is not an issue in this case. Admissibility is a different thing than eligibility. Admissibility is governed by the inadmissibility grounds at Section 1182 of Title VIII United States Code. If an alien falls into one of those classes of inadmissible aliens, they can't adjust status unless there's a waiver available. If Mr. Guerrero, for example, if Mr. Guerrero were to try to go back and counsel a process, he would trigger an unlawful presence bar at 1182A9. That is not what is making him ineligible to adjust here. It is an eligibility issue written directly into the adjustment statute. And while, yes, the TPS statute at bar here references the entirety of Section 1255, it is the adjustment statute that governs adjustment eligibility. And what must be considered is Section 1255C1, which is the fact that Mr. Guerrero was admitted to the United States as a criminal. And that status endures, even with obtaining temporary protected status. The best case for that is that it endures, it's immutable. Yes. In fact, Orianna, Your Honor, it says while registered for TPS, an alien maintains any preexisting immigration status he previously obtained and may acquire a new status. So the fact that these statuses stack on each other doesn't eliminate the previous admission as a crew member and, therefore, doesn't eliminate the bar to crew member status. Chigginbotham asked your opposing counsel, is the TPS determination a universal one or is it an individualized one? The designation of a country is a universal discretionary determination by the Secretary of Homeland Security. It was not necessary for him to have been a crew member to have gotten TPS status. Correct, Your Honor. Correct. Yet because of that circumstance, he does not get the benefit of the TPS. Yes. Well, the benefit of TPS — I'm having a little difficulty understanding the sense of that. Why do you say he doesn't get the benefit? I thought he does get the benefit. He does get the benefit. I apologize. He does get the benefit of TPS, which is to — even though he entered as a crew member and normally people that overstay crew member status, their crew member admission would be removable, he is not removable. That's the benefit that he does obtain because — That goes back to the earlier questions about distinctions in terms of removability and eligibility. Yes, yes. So as it pertains to TPS, the benefit that he obtains is that he is not removable for having overstayed his crew member admission, which was a period of 30 days. What is his status? He can't adjust his status, but you can't remove him. He is here under a temporary protected status while the country has been designated. He's a lawful nonimmigrant. He is considered as being a lawful nonimmigrant. Yes, Your Honor. So long as Honduras is — So long as Honduras remains — His ticket. Exactly. But he can't adjust his status thereafter, given the crewman bar to adjustment. And what purpose does that serve? Is Your Honor referring to what purpose does the protection serve? I'm trying to get some rational sense of how that — what Congress has had in mind with that statute. And as you describe it in operation, it doesn't make a lot of sense to me. I think I understand Your Honor's question, and I've run over my time, but if you'll allow me to answer that question. The purpose of that section, the lawful status provision, 1254a of 4, is basically to allow a person to maintain a status they obtained previously and not —    Your honor, you're going to have to qualify for that and your recitation's there. You won't be deported. However, if you, for you to adjust that to something else, you're going to have to otherwise qualify for cutting through all the statutory recitations. Yes. If Your Honor wouldn't mind, I can provide a hypothetical. Okay. I think I understand. Well, that's all I have, unless Your Honor has any further questions. That's it. Maybe if he would have become a crew member on the budget vendor, we would have prevented the fire that took place in our next case. That took place on the.